UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

In re:                                                    Case No. GL 12-03851-jtg

ADAM HOWELL HIRSCH,                                        Chapter 13

        Debtor.                                           Hon. John T. Gregg

_____/

**MEMORANDUM DECISION**
**<u>REGARDING FEE APPLICATION</u>**

APPEARANCES:    Michael Brown, Esq., Dietrich Law Firm, Lansing, Michigan.
                    Barbara P. Foley, Esq., Chapter 13 Trustee, Kalamazoo, Michigan.

This matter comes before the court in connection with the Second Application for Award of Attorney Fees [Dkt. No. 120] (the "Application") filed by the Dietrich Law Firm (the "Applicant"), counsel for the debtor (the "Debtor") in the above-captioned, and now dismissed, Chapter 13 case. In the Application, the Applicant requests that the court award it compensation for the services it provided to the Debtor both before and after the Debtor voluntarily dismissed his case. The Applicant also requests that any compensation awarded to it be paid as an administrative expense from funds currently held by Barbara P. Foley, the Chapter 13 trustee (the "Trustee").

The Trustee filed an objection [Dkt. No. 123] (the "Objection") in which she contends, among other things, that the compensation sought by the Applicant for post-dismissal services was neither necessary nor beneficial to the Debtor. The Trustee also asserts that the Applicant's request for an award of compensation was untimely. Finally and somewhat similarly, the Trustee argues that the Applicant's request for an administrative expense was untimely.

In this case, the court is called upon to consider the following issues:

(i)     whether the Applicant timely requested, and is entitled to, an award of compensation under section 330(a) for the services it provided to the Debtor both before and after the case was dismissed;

(ii)    whether the Applicant timely requested, and is entitled to, an administrative expense to be paid from the estate under section 503 for any compensation awarded to it;

(iii)   whether, after dismissal, the Applicant may seek payment of any compensation awarded to it under section 330(a) directly from the Debtor; and

(iv)    whether any administrative expense allowed by the court may be paid from funds in the possession of the Trustee, notwithstanding dismissal under section 349.[1]

For the following reasons, the court shall award the Applicant compensation for pre and post-dismissal services, all of which may be paid as an administrative expense.  However, at this time, the Trustee may not distribute funds currently in her possession in order to satisfy the Applicant's administrative expense.  Nor may the Applicant seek payment directly from the Debtor absent further order of the court.[2]

## JURISDICTION

The court has jurisdiction pursuant to 28 U.S.C. § 1334(b).  Notwithstanding the dismissal of this case, the court retains jurisdiction to adjudicate issues related to compensation of professionals.  *Dery v. Cumberland Cas. Sur. Co. (In re 5900 Assocs. Inc.)*, 468 F.3d 326, 330-31 (6th Cir. 2006).  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A)-(B).

---

[1]      Unless otherwise indicated, all "Chapter" and "section" references are to the Bankruptcy Code, 11 U.S.C. §§ 101, *et seq*., and "Rule" references are to the Federal Rules of Bankruptcy Procedure.

[2]      The following constitutes this court's findings of fact and conclusions of law under Fed. R. Bankr. P. 7052.

## **BACKGROUND**

The facts in this case are relatively straightforward and are not in dispute. Prior to his bankruptcy, the Debtor was unable to remain current on his obligations to the holder of a mortgage on his residence. In April 2012 and with the assistance of the Applicant, the Debtor filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code. Later that year, the court confirmed the Debtor's plan of reorganization, as amended [Dkt. Nos. 27, 37, 41, 45].

As is common practice in the Western District of Michigan, the plan provided that the Applicant would be paid an initial "no-look" fee for the services of the Applicant through confirmation.[3] The plan further stated that the no-look fee constituted an allowed administrative expense entitled to priority. The plan and a separately filed statement under Rule 2016(b) [Dkt. No. 25] (the "Statement") similarly provided that any additional compensation awarded to the Applicant was to be paid through the plan as an administrative expense entitled to priority, subject to allowance by the court.

The Debtor struggled to perform in his bankruptcy. At least two creditors moved for and were granted relief from the automatic stay [Dkt. Nos. 43-44, 49-50], and the Trustee filed several motions to dismiss [Dkt. Nos. 54, 74, 106]. In June 2014, the Applicant filed its first application for allowance of fees and expenses [Dkt. No. 77]. The first fee application requested significant fees as a result of the services performed by the Applicant to, in large part, stave off dismissal. Approximately one month later, the court approved the compensation in full and granted the Applicant an administrative expense [Dkt. No. 79].

---

[3]     The court has promulgated guidelines for professional compensation as set forth in the *Memorandum Regarding Allowance of Compensation and Reimbursement of Expenses for Court-Appointed Professionals Effective January 1, 2010* and thereafter amended on October 9, 2013 (the "Fee Memorandum"). *See In re Rogers*, 500 B.R. 537, 543-44 (Bankr. W.D. Mich. 2013) (discussing no-look fee in Western District of Michigan).

The Debtor's case remained relatively dormant for a little less than a year until Green Tree Servicing, LLC n/k/a Ditech Financial LLC ("Ditech"), the mortgagee's servicer, filed a one page motion in June 2015 requesting that the court approve a loan modification agreement between the Debtor and Ditech that had been executed in October 2013 [Dkt. No. 101].  The Trustee and the Debtor both filed objections to the motion [Dkt. Nos. 102-103].  After the United States Trustee also objected [Dkt. No. 111], Ditech, the United States Trustee, the Debtor and the Trustee filed a stipulation which resolved the majority of the issues related to the loan modification motion, including overpayments made by the Trustee to Ditech [Dkt. No. 115].  The stipulation required Ditech to refund the amount of $7,656.03 to the Trustee, who was then required to "disburse the refunded Total Overpayment Amount pursuant to the Debtor's confirmed Chapter 13 Plan, excepting only payments to Ditech."  The court entered an order approving the stipulation on September 10, 2015 [Dkt. No. 116].[4]

Four days after the court approved the loan modification stipulation, the Debtor voluntarily dismissed his case.  The motion to dismiss filed by the Debtor was silent as to whether any funds in the possession of the Trustee would revest in the Debtor or would be distributed by the Trustee pursuant to the plan [Dkt. No. 117].  The court entered a dismissal order stating that all provisions of section 349 of the Bankruptcy Code were in effect [Dkt. No. 118].  The order also required the Trustee to promptly file a final accounting.  No accounting was forthcoming though.  Instead, the Trustee decided to delay filing the accounting pending receipt of the overpayment refund from Ditech.

---

[4]    The stipulation contemplated a plan amendment, as well as a second stipulation whereby the parties would address certain other outstanding issues related to the loan modification.  However, neither the second stipulation nor the amendment were filed prior to dismissal of the Debtor's case.

The dismissal of the Debtor's case appears to have resulted in some confusion. Ditech initially balked at providing the overpayment refund. On October 30, 2015, the Applicant sent an email to counsel for Ditech and the Trustee inquiring as to the status of the overpayment refund. Counsel for Ditech responded by stating only that "[t]his case has been dismissed." Thereafter, the Trustee advised Ditech that she believed the overpayment refund should be distributed pursuant to the plan. The Applicant sought assistance from the United States Trustee by sending his counsel a fairly detailed email on November 2, 2015. It is unclear how or if the United States Trustee responded, but it is clear that two days after the Applicant's email to the United States Trustee, Ditech informed the parties that it had reconsidered its position and that the Trustee should expect to receive the overpayment refund soon. The Trustee received the overpayment refund from Ditech on November 23, 2015.

Approximately two months after the dismissal order was entered and around the time Ditech confirmed it would provide the overpayment refund, the Applicant filed the Application. The Application requests two forms of relief. First, the Application requests that the court award the Applicant compensation in the amount of $5,433.96 for services performed by the Applicant both before and after the case was dismissed. Second, the Application requests that any compensation awarded to it be paid as an administrative expense. The Application, like the motion to dismiss, is silent regarding the revesting of property of the estate upon dismissal.

The Trustee filed her Objection on December 7, 2015. In her Objection, the Trustee contends that the court should not award the Applicant compensation for the services it provided after dismissal because the services were untimely, as was the request for compensation. The Trustee also asserts that any compensation awarded to the Applicant should not be paid as an administrative expense. Finally, the Trustee argues that even if the Applicant is not seeking an

administrative expense for post-dismissal services and instead seeks to be paid directly by the Debtor, the post-dismissal fees are, in large part, excessive under section 329 of the Bankruptcy Code.[5]

Shortly before the initial hearing on the Application, the Applicant filed a lengthy reply brief [Dkt. No. 127] asserting that all actions taken were necessary and beneficial to the Debtor because the Debtor requested that the Applicant continue to monitor the status of the overpayment refund, apparently even after the case was dismissed. The Applicant also reiterated that it was seeking an administrative expense to be paid from the overpayment refund through the plan.

During an initial hearing, both parties requested an opportunity to file supplemental briefs.[6] After the parties filed their supplemental briefs [Dkt. Nos. 131-132, 137] and a stipulation of facts [Dkt. No. 135] in lieu of any testimony or other proofs, the court held a final hearing on February 2, 2016.[7] At the conclusion of the hearing, the court took the matter under advisement.

Upon consideration of the legal arguments and limited evidence presented, the court shall award the Applicant compensation in the aggregate amount of $4,539.50 to be paid, to the extent possible, as an administrative expense, defer ruling on whether the Trustee may satisfy the

---

[5] The Trustee also objected to certain time entries based on the amount of time spent and a lack of specificity. The Trustee has since withdrawn such objections and the parties have agreed that in the event the court determines the Application to have been timely filed, the Applicant shall be limited to compensation in the aggregate amount of $4,539.60.

[6] At the initial hearing, the court expressed concern that the dispute might require the court to consider whether the overpayment refund should revest in the Debtor because the case was dismissed. *See* 11 U.S.C. § 349(b)(3). The Trustee and the Applicant advised the court that the loan modification stipulation addressed this issue by requiring distribution of the overpayment refund in accordance with the terms of the confirmed plan.

[7] At the request of the parties, the final hearing was held on a consolidated basis with two other cases in which the Trustee has objected to the timeliness of the Applicant's fee application. Because those cases involve plan completion, and not the dismissal of a case, the court has issued a separate decision in those cases. *See In re Cripps*, Case No. 10-07809 (Bankr. W.D. Mich. May 13, 2016); *In re Mears*, Case No. 11-11505 (Bankr. W.D. Mich. May 13, 2016).

administrative expense by distributing the overpayment refund, and order that no compensation be paid to the Applicant directly by the Debtor absent further court order.

## **DISCUSSION**

The parties have characterized the primary issue in this case as one of timing. The Trustee urges the court to deny any award of compensation to the Applicant. According to the Trustee, the Applicant's request for an award of compensation was not timely, and even if it was, the court should not award compensation for post-dismissal services as a matter of law. Similarly, the Trustee contends that any compensation awarded to the Applicant should not be paid as an administrative expense, as such request was untimely. The Applicant counters that nothing precludes it from seeking an award of compensation to be paid as an administrative expense after dismissal, including compensation for services the Applicant provided to the Debtor after dismissal.

The issue of timing is therefore implicated on several levels. First, the court must consider, among other things, whether the post-dismissal services that the Applicant provided to the Debtor were necessary, beneficial and made "in connection with the bankruptcy case." Second, the court must decide whether the request for an award of compensation was timely. Third, the court must separately consider whether the request for an administrative expense was timely. Lastly, the court must determine whether the Trustee may satisfy any administrative expense from the overpayment refund, or if the Applicant may seek payment of any compensation awarded from the Debtor in his individual capacity.

### A.      *Compensation of Attorneys for Debtors*

In its Application, the Applicant asks the court to approve its fees and expenses for pre and post-dismissal services provided to the Debtor. The court concludes that the Applicant has

satisfied its burden of demonstrating that it is entitled to an award of compensation for its pre and post-dismissal services, subject to the reductions agreed upon by the Applicant and the Trustee in their stipulation of facts.

### 1. Disclosure Requirements Under 11 U.S.C. § 329 and Fed. R. Bankr. P. 2016

In order to be entitled to compensation from the estate or any other source, an attorney for a debtor under any Chapter of the Bankruptcy Code must adhere to certain disclosure requirements. Section 329 of the Bankruptcy Code governs transactions between a debtor and his or her attorney.

The language of section 329(a) is mandatory in all respects – an attorney representing a debtor must file a statement disclosing any compensation arrangement, regardless of whether the fees are to be paid by the debtor, the debtor's estate, or a third person. *Mapother & Mapother, P.S.C. v. Cooper (In re Downs)*, 103 F.3d 472, 477 (6th Cir. 1996). The scope of section 329 is also extremely broad. An attorney for a debtor must disclose compensation arrangements for any services "in connection with the case," including after a case has been dismissed or completed. 11 U.S.C. § 329(a); *see In re Marin*, 256 B.R. 503, 507 (Bankr. D. Colo. 2000) (section 329 not vitiated by dismissal); *see also* Fed. R. Bankr. P. 2017(b) (court may determine whether compensation arrangement excessive "for services in any way related to the case"). Section 329 evinces Congress' intent that bankruptcy courts closely review and monitor compensation arrangements between a debtor and his or her attorney due to the potential for overreaching. *Henderson v. Kisseberth (In re Kisseberth)*, 273 F.3d 714, 720 (6th Cir. 2001); *In re McDonald Bros. Constr. Co.*, 114 B.R. 989, 995 (Bankr. N.D. Ill. 1990) (citing H.R. Rep. No. 595, 95th Cong., 1st Sess. 329 (1977)). In the event that compensation is unreasonable, the court has the authority to cancel the agreement and/or order the attorney to disgorge amounts previously paid. 11 U.S.C. § 329(b); *see In re Downs*, 103 F.3d at 477-78 (citations omitted).

The compensation provisions of the Bankruptcy Code are procedurally implemented by Rule 2016 of the Federal Rules of Bankruptcy Procedure. *See In re Chandlier*, 292 B.R. 583, 586 (Bankr. W.D. Mich. 2003), *aff'd on other grounds*, 404 F.3d 395 (6th Cir. 2005). Rule 2016(a) applies to any professional seeking an administrative expense under sections 330(a) and 503 for fees and expenses, including attorneys representing debtors in Chapter 13 cases. It requires a professional to file with the court an application containing certain information, including an itemized statement of fees and expenses. Fed. R. Bankr. P. 2016(a); *see* LBR 2016-2(e).

Unlike Rule 2016(a), Rule 2016(b) only applies to an attorney for a debtor. Where an attorney for a debtor is seeking compensation, Rule 2016(b) requires the attorney to disclose information related to services rendered "in connection with the case," regardless of whether compensation is sought from the estate. Fed. R. Bankr. P. 2016(b). Without exception, an attorney for a debtor must disclose the actual compensation that has been, or will be, paid. 11 U.S.C. § 329; Fed. R. Bankr. P. 2016(b). The information contained in the statement required by Rule 2016(b) must permit the court and certain parties in interest to preliminarily assess whether the fees and expenses are reasonable without further inquiry. *See* Fed. R. Bankr. P. 2016(b); *see also* Fed. R. Bankr. P. 2017. The Sixth Circuit has recognized that section 329 and Rule 2016(b) require an attorney for a debtor to file "a detailed statement of services rendered and expenses incurred." *In re 5900 Assocs., Inc.*, 468 F.3d 326, 329 (6th Cir. 2006); *see In re Fricker*, 131 B.R. 932, 941 (Bankr. E.D. Pa. 1991) (statement must be as specific as possible and is prerequisite to compensation); *In re Burroughs*, 2012 WL 5053054, at \*2 (Bankr. E.D. Okla. Oct. 18, 2012) (reporting of time and expenses are required for reasonableness determination under section 329);

*see also* Fed. R. Bankr. P. 2016(b) (setting forth non-exhaustive list of requirements to be included in statement).[8]

Section 329 and Rule 2016(b) are particularly important where a fee application has not been filed, such as in a Chapter 7 case, because they further the goal of Congress by protecting debtors in bankruptcy.  Nonetheless, they apply with equal force to all attorneys for debtors, including those in Chapter 13 cases.  *See In re Fricker*, 131 B.R. at 940-41 (statement under Rule 2016(b) has special significance in Chapter 13 cases).

In this case, the Applicant made the necessary disclosures for the services it provided to the Debtor in connection with his bankruptcy case.  The Applicant timely filed the Statement shortly after the Debtor's case commenced.  The Statement sets forth the amount and source of compensation, among other things, and refers to an agreement between the Applicant and the Debtor.  *See* 11 U.S.C. § 528(a)(1) (requiring execution of written agreement between debtor and attorney).  The Statement reveals that the source of the Applicant's compensation is limited to payments in satisfaction of administrative expenses made through the plan.

The Applicant also properly filed the Application seeking court approval of its fees and expenses.  *See In re 5900 Assocs., Inc.*, 468 F.3d at 329; *In re Anderson*, 253 B.R. 14, 20 (Bankr. E.D. Mich. 2000) (fees not earned by professional until approved by court).  The Application is skeletal in nature, meaning that it provides little narrative in the text of the Application itself, but it does include an itemized statement.[9]  The Trustee was the only party to file an objection.  The

---

[8]     The court notes that it is not necessary to attach an itemized statement to a statement under Rule 2016(b) where the same fees and expenses are reflected in an itemized statement attached to a separately filed fee application.

[9]     The Application consists of only three paragraphs and provides no explanation regarding the services rendered even though the Applicant is seeking a significant amount of compensation.  The Application appears to be a form document with boilerplate provisions.  Given the significant amount of compensation requested, the Applicant should have included a more substantive narrative in the text of the Application to provide the court and other parties in interest with a better understanding of the services in relation to the specific demands of the Debtor's case.  However, in this case, the Applicant filed a response to the objection, as well as a supplemental brief which further

Trustee's objection does not relate to any failure on the part of the Applicant to disclose requisite information. Instead, the Applicant filed sufficient information for parties in interest and the court to review the proposed compensation. Although the Applicant has not filed a copy of the retention agreement, the court perceives the Applicant's failure in this regard as an inadvertent error as opposed to an attempt to conceal certain aspects of the relationship between the Applicant and the Debtor.[10] The court therefore concludes that, other than filing the retention agreement, the Applicant has complied with its disclosure obligations. The court next considers whether the Applicant is entitled to an award of compensation under section 330(a).

### 2. *Reasonableness of Fees and Expenses – 11 U.S.C. § 330*

Section 329 and Rule 2016 are primarily concerned with disclosure. Section 330 serves a separate purpose by, among other things, establishing the means by which to evaluate the reasonableness of the compensation sought. The Sixth Circuit Court of Appeals has emphasized that section 330 applies to all fees in connection with a bankruptcy case, and not only those that are to be paid from the bankruptcy estate as administrative expenses. *In re 5900 Assocs.*, 468 F.3d at 330; *see In re Kisseberth*, 273 F.3d at 719 (any payment made to an attorney for a debtor is reviewable by bankruptcy court regardless of source of payment); *In re Gage*, 394 B.R. 184, 191 (Bankr. N.D. Ill. 2008) (factors under section 330(a) applicable to determination of reasonableness under section 329). "[A]bsent court approval, neither the debtor nor the estate is ever liable." *In*

---

supports its request. In the future, the court may require a more substantive narrative before approving fees and expenses, particularly where a significant amount of compensation is requested, whether for a particular task or on the whole.

[10]   The Local Bankruptcy Rules require counsel for a debtor in a Chapter 13 case to file a copy of the retention agreement prior to confirmation of the plan. LBR 2016-2(e)(1)(A), *see* LBR 2016-2(e)(2)(A); Fee Memorandum at ¶ 16 (attorney shall file copy of retention agreement). In future cases, the Applicant should comply with LBR 2016-2(e)(1)(A) by timely filing a copy of the retention agreement, including any amendments thereto. The retention agreement should be included as an attachment to the statement, which is required to be filed within fourteen days of the petition date and supplemented as necessary. *See* Fed. R. Bankr. P. 2016(b); *In re Marin*, 256 B.R. at 507 n.3 (advising attorneys to attach retention agreement to statement).

*re 5900 Assocs.*, 468 F.3d at 331; *see In re Brown*, 354 B.R. 535, 540 (Bankr. N.D. Okla. 2006) (court approval may not be circumvented by agreement); *In re Anderson*, 253 B.R. at 20 (court approval required in order for attorney to be paid post-petition in Chapter 13 case) (citations omitted); *In re Wyant*, 217 B.R. 585, 587-88 (Bankr. D. Neb. 1998) (Chapter 13 plan may not provide for direct payment to counsel because such provision would circumvent court approval process); *In re Fricker*, 131 B.R. at 941 (attorney has duty to file fee application even where plan does not contemplate payments to attorney); *In re Jeanes*, 2004 WL 1718093, at \*2 (Bankr. N.D. Iowa June 17, 2004) (absent court approval under section 330, neither estate nor debtor is ever liable in Chapter 13 case).[11]

Section 330(a) provides the framework for a court to review the fees and expenses of an attorney for a debtor in a Chapter 13 case by stating, in pertinent part, that:

> the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.

11 U.S.C. § 330(a)(4)(B). Section 330(a) does not include a temporal limitation with respect to services rendered by an attorney for a debtor. Rather, similar to section 329, section 330(a) only requires that the attorney represent the Chapter 13 debtor's interests "in connection with the bankruptcy case." *Id*. Nor does section 330(a) impose a deadline for an attorney to request approval of his compensation from the court. *Cf. In re Alda*, 464 B.R. 61, 2010 WL 4924615

---

[11]   When the Sixth Circuit stated in *5900 Assocs.* that compensation for an attorney for a debtor must be approved under section 330, it did so in the context of a fraudulent transfer action in a Chapter 11 case, not in the context of a fee application in a Chapter 13 case. Nonetheless, the Sixth Circuit's statement regarding the means by which an attorney for a debtor must seek compensation is expansive. *Contra Barron v. Countryman*, 432 F.3d 590, 595 (5th Cir. 2005) (section 330 not applicable to attorneys' fees derived from source other than estate). In her supplemental brief, the Trustee expressed some concern that a recent unpublished decision from the court is not consistent with *5900 Assocs*. *See In re Acevedo*, Case No. 12-06576 (Bankr. W.D. Mich. Jan. 26, 2015). This court perceives no conflict with *Acevedo* in this case. The result is the same – fees and expenses are subject to review and approval by the court.

(B.A.P. 6th Cir. 2010) (table decision) (court has inherent authority under section 105(a) to establish deadline to seek award of compensation).

To determine whether compensation is reasonable, courts are directed to section 330(a)(3) which sets forth a non-exhaustive list of "other factors." 11 U.S.C. § 330(a)(4)(B); *see Boddy v. United States Bankr. Court (In re Boddy)*, 950 F.2d 334, 337 (6th Cir. 1991); *see also* 11 U.S.C. § 102(3) (including is not term of limitation). Courts have generally considered the following factors to determine if the fees and expenses sought are compensable:

> (i)      the time spent on such services;
>
> (ii)     the rates charged for such services;
>
> (iii)    whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (iv)    whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (v)     with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field;
>
> (vi)    whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title;
>
> (vii)   the novelty and difficulty of the issues;
>
> (viii)  the special skills of counsel; and
>
> (ix)    the results obtained.

11 U.S.C. § 330(a)(3); *In re Ulrich*, 517 B.R. 77, 81 (Bankr. E.D. Mich. 2014) (identifying other relevant factors in addition to those in section 330(a)(3)) (citations omitted).

A professional seeking approval of fees and expenses bears the burden of proof by a preponderance of the evidence. *Id*. at 80 (citations omitted). "This burden is not to be taken

lightly, especially given that every dollar expended on legal fees results in a dollar less that is available for distribution to the creditors or use by debtor." *Id*. (quoting *In re Pettibone Corp.*, 74 B.R. 293, 299 (Bankr. N.D. Ill. 1987)).

### a.    *Compensation for Pre-Dismissal Services*

In this case, the Applicant seeks approval of pre-dismissal fees and expenses in the aggregate amount of $4,537.76. For the most part, the court concludes that the Applicant has satisfied its burden of demonstrating that it is entitled to an award of compensation under section 330(a) for its pre-dismissal services.

For the period beginning June 22, 2015 and ending the date of dismissal, the Applicant spent significant time counseling the Debtor regarding the loan modification motion and stipulation resolving the same, the overpayment refund, at least one motion to dismiss, and an employment discrimination claim.[12] The Applicant met with and spoke to the Debtor on numerous occasions regarding these subjects and has appropriately designated certain actions as "no charge." Moreover, all of the services for which the Applicant seeks compensation were rendered in connection with the Debtor's case. Although the majority of the time appears reasonable, the court does have some concerns, all of which were highlighted by the Trustee in her Objection.

First, the Applicant seeks compensation for time spent by a paralegal drafting notices of change of address for the period of August 13-18, 2014. Several entries reflect time of 0.10 hours, while others reflect time of 0.20 hours. Based on the court's familiarity with the forms used by the Applicant and the time in which it takes other law firms to prepare the same forms, the time entries of 0.20 are excessive.

---

[12]    The Applicant seeks to be compensated at the presumptive hourly rate in the Western District of Michigan as set forth in the Fee Memorandum.

Second, the Applicant seeks compensation for five hours of time regarding the retention of special counsel for the purpose of pursuing the employment discrimination claim.[13]  On its face, five hours is an extraordinary amount of time for a two page application and supporting documents. However, upon close inspection, the specific time entries reveal that the Applicant spent considerable time discussing the cause of action with the Debtor and coordinating with proposed special counsel.[14]  In addition, the court scheduled a hearing triggered by a recent decision from the Sixth Circuit Court of Appeals, thereby requiring the Applicant to prepare for and attend a hearing involving a substantive legal issue.  *See Rugiero v. Nationstar Mortg., LLC*, 580 Fed. Appx. 376, 378 (6th Cir. 2014) (Chapter 13 debtor lacks standing to pursue certain causes of action); *but see also In re Rosenblum*, 545 B.R. 846, 863-73 (Bankr. E.D. Pa. 2016) (Chapter 13 debtor entitled to derivative standing).  In light of these details and the Applicant's need to address the concerns of the court, the Debtor, and proposed special counsel, the court finds that the time spent related to the employment discrimination claim should not exceed three hours.

Finally, the Trustee asserts that several other time entries for which the Applicant seeks compensation are unnecessary and/or excessive, including fourteen separate entries of 0.10 hours of time on one day for the drafting and review of correspondence.[15]  The court shares several of the Trustee's concerns but notes that the Trustee and the Applicant resolved the Trustee's

---

[13]    It is unclear why the Debtor filed a retention application for special counsel in this Chapter 13 case, but the court will not penalize the Debtor's decision to disclose, out of an abundance of caution, the retention of special counsel and pursuit of a cause of action constituting property of the estate.

[14]    Absent the Objection, the court would likely have scheduled the Application for hearing based on, among other things, the time spent by the Applicant in connection with the retention of special counsel.  In the future, the Applicant should provide a short narrative of actions taken and the need for such actions, particularly those that may, at least on their face, appear excessive.  *See supra* at n.9.  By providing the court with this information, the Applicant may circumvent the need for a hearing to answer any questions the court may have regarding certain time entries.

[15]    The court notes that throughout the Application, the Applicant properly separated each activity in accordance with the Fee Memorandum.

objections to specific time entries prior to the final hearing on the Application.  The court will not disturb the compromise reached by the parties.

The pre-dismissal services provided by the Applicant to the Debtor were necessary, beneficial and rendered in connection with the Debtor's case.  Therefore, subject to the reductions agreed upon by the Applicant and the Trustee, the court shall approve the fees and expenses of the Applicant prior to dismissal of the case.

### b.      Compensation for Post-Dismissal Services

The Applicant also seeks compensation in the aggregate amount of $896.20 for post-dismissal services.  The Trustee argues that the Applicant's post-dismissal services were neither beneficial nor necessary to the Debtor for no other reason than the case was dismissed.  In other words, the Trustee contends that because the services were rendered after the case was dismissed, the Applicant is not entitled to an award of compensation under section 330(a) as a matter of law.  Whether the Applicant is entitled to an award of compensation for post-dismissal services, as opposed to pre-dismissal services, is a more difficult question.  As the Applicant stresses, nothing in the Bankruptcy Code or any applicable rule establishes a temporal limitation with respect to services giving rise to an award of compensation.  Instead, the court is guided by the requirements under section 330(a)(4)(B) that the services be necessary, beneficial, and rendered "in connection with the bankruptcy case."  Upon consideration, the Trustee's argument, while perhaps persuasive in other cases, is not persuasive in light of the facts in this case.

The court will first address whether the post-dismissal services were rendered "in connection with the bankruptcy case," a phrase not defined in the Bankruptcy Code.  The United States Supreme Court has instructed courts to presume that the legislature "says in a statute what it means and means in a statute what it says. . ."  *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-

54 (1992) (citations omitted); *see Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004). "[W]hen the statute's language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms." *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) (citation omitted). When the meaning of a term or phrase that is neither a term of art nor expressly defined by statute, a court should consult general and legal dictionaries to determine the ordinary meaning. *See*, *e.g.*, *Asgrow Seed Co. v. Winterboer*, 513 U.S. 179, 187 (1995); *Grand Traverse Band of Ottawa and Chippewa Indians v. U.S. Attorney*, 369 F.3d 960, 967 (6th Cir. 2004).

The court finds the meaning of "in connection with the bankruptcy case" to be clear and unambiguous. It means to have a "causal or logical relation or sequence." Webster's Ninth New Collegiate Dictionary 342 (1989); *see* Black's Law Dictionary 302 (6th ed. 1990) (defining "connection" as "the state of being connected or joined," among other things). The plain meaning thus requires the court to give the phrase "in connection with the bankruptcy case" a broad reading.[16] Congress clearly understood how to provide temporal limitations in the Bankruptcy Code by using terms such as "during", "prior", "before" and "after." *See*, *e.g.*, 11 U.S.C. § 101(10A)(A) (current monthly income is income debtor receives "during" six-month period preceding petition date); 11 U.S.C. § 1305(c) (post-petition claim disallowed if claimant knew "prior" approval by trustee was practicable and not obtained); 11 U.S.C. § 1306(a)(1) (property of estate in Chapter 13 includes property debtor acquires "after" commencement of case but "before"

---

[16] Even if an argument could be made that some ambiguity exists, the sparse legislative history of section 330(a)(4) does not compel a different result. *See* 140 Cong. Rec. S4640-01 (daily ed. Apr. 21, 1994) (lone statement of Mr. Heflin on behalf of Sen. Metzenbaum requests reading of amended language of section 330 be waived); 140 Cong. Rec. S14597-02 (daily ed. Oct. 7, 1994) (statement of Sen. Metzenbaum that inclusion of factors to determine reasonableness in amended section 330 intended to curb abuses in large bankruptcy cases). The court's interpretation of the phrase is also supported by the underlying purpose of section 330(a)(4)(B) – to ensure that debtors in cases under Chapter 12 and Chapter 13 are receiving adequate representation from attorneys who are appropriately compensated for their services. *See*, *e.g.*, *In re Balderas*, 328 B.R. 707, 722 (Bankr. W.D. Tex. 2005).

case is closed, dismissed, or converted).  In section 330(a)(4)(B), however, Congress chose to use

a temporally indefinite phrase that would encompass services related to a case, so long as they

were both necessary and beneficial to the debtor.  Nothing leads the court to believe that an attorney

for a Chapter 13 debtor is precluded *per se* from seeking an award of compensation for post-

dismissal services.

This court's interpretation of the phrase is consistent with that of other courts, which have

given broad meaning to the term "in connection with the case" found in section 329.  *See*, *e.g.*, *In*

*re Gage*, 394 B.R. at 194; *In re Campbell*, 259 B.R. 615, 626 (Bankr. N.D. Ohio 2001) (citations

omitted).  One court has explained as follows:

> If it can be objectively determined that the services rendered or to be
> rendered by the attorney have or will have an impact on the bankruptcy case,
> then such services are deemed to have been rendered in connection with the
> bankruptcy case and the attorney has a duty to disclose any compensation
> received or to be received for such services.  *Keller Fin. Serv.*, 248 B.R. at
> 879; *see also Cohn v. U.S. Trustee (In re Ostas)*, 158 B.R. 312, 321
> (N.D.N.Y. 1993) ["The phrase ('in connection with') may include services
> related to [a] precipitating cause of the bankruptcy, or services which are
> inextricably intertwined with the bankruptcy."]

*In re Bartmann*, 320 B.R. 725, 747 (Bankr. N.D. Okla. 2004) (quoting *In re Mayeaux*, 269 B.R.

614, 623 (Bankr. E.D. Tex. 2001)).

This court is also persuaded that the broad interpretation of the phrase "in connection with

the case" employed in the context of section 329 is equally applicable to the phrase "in connection

with the bankruptcy case" contained in section 330(a)(4)(B).  *See In re Powell*, 314 B.R. 567, 570-

71 (Bankr. N.D. Tex. 2004) (phrase in section 330(a)(4) includes any services that could have

conceivable effect on Chapter 13 case); *see also In re Busetta-Silvia*, 314 B.R. 218, 224 n.30

(B.A.P. 10th Cir. 2004) (citations omitted) (noting that prepetition fees may be entitled to

administrative expense under section 330(a)(4) based on broad reading of "in connection with the

case" in section 329); *cf. In re Campbell*, 259 B.R. at 626 (recognizing that the phrase does not include every service rendered to debtor) (citation omitted)).[17]

The services that the Applicant provided to the Debtor were clearly related to the Debtor's bankruptcy case. The connection was by no means tenuous or remote. Instead, the services had a close nexus to the case, beginning with the payment of the Debtor's wages into the plan that were thereafter distributed by the Trustee to Ditech. The Debtor clearly had an interest in recovering those funds and ensuring that Ditech complied with the loan modification order entered by the court in his case. The stipulation with Ditech and subsequent order from this court created an expectation that the Debtor would derive a benefit, whether direct or indirect, from the overpayment refund. In light of this correlation, the court finds that the services of the Applicant were rendered "in connection with the bankruptcy case."

The court next considers whether the post-dismissal services were necessary and beneficial. Here, it is hard to conclude that the Debtor did not receive a benefit. The Applicant contributed to the return of more than $7,000 from Ditech and in exchange the Debtor incurred less than $800.00 in post-dismissal fees and expenses. After the dismissal order was entered, the Applicant communicated with the Debtor, the Trustee, counsel for Ditech and the United States Trustee regarding the overpayment refund on five different days between September 21, 2015 and November 5, 2015. The court does not view the Applicant's efforts in this regard to be excessive, as the Trustee contends. Rather, the Applicant took action that was reasonably necessary to ensure that Ditech complied with its obligations under the loan modification stipulation and order.

---

[17]   Section 329 and Rule 2016(a) refer to services rendered "in connection with the case," whereas section 330(a)(4)(B) refers to services rendered "in connection with the bankruptcy case." The court can find little purpose to be served by adding the word "bankruptcy" in section 330(a)(4)(B), and the legislative history does not indicate otherwise. Rather, the word "bankruptcy" may have been included solely for purposes of clarity when the Bankruptcy Code was amended in 1994. *See* 140 Cong. Rec. S4640-01 (daily ed. Apr. 21, 1994) (providing no explanation).

The Applicant provided further benefit by attempting to resolve the dispute without judicial intervention, which would likely have been a more costly endeavor.[18]  After counsel for Ditech informed the Applicant that the case had been dismissed, thereby implying that Ditech would not be remitting the overpayment refund to the Trustee, the Applicant sought assistance from the United States Trustee.  The Applicant also conducted legal research in order to better understand the Debtor's rights with respect to the overpayment refund.  The Applicant cannot be faulted for performing legal research so that it was prepared to give advice to the Debtor regarding the overpayment refund.  Without the Applicant's diligence, it is debatable whether Ditech would have remitted the overpayment refund to the Trustee.

The Trustee contends that because she and the United States Trustee were monitoring the status of the overpayment refund, the actions of the Applicant were not necessary and were, in effect, duplicative.  The court disagrees.  The Applicant, not the Trustee or the United States Trustee, represents the interests of the Debtor.  *See In re Clinkscale*, 525 B.R. 399, 406-407 (Bankr. W.D. Mich. 2015).  According to the Applicant, the Debtor requested that the Applicant continue to monitor the status of the overpayment refund, even after dismissal.  The Debtor relied on the Applicant to pursue his interest in the overpayment refund, and the court will not second guess the direction that the Debtor gave to the Applicant in light of the facts in this case.[19]  While the actions of the Trustee and United States Trustee may have allowed the Debtor to play a reduced role, the

---

[18]     Although the court has jurisdiction to adjudicate issues related to professional compensation after dismissal, it is less certain the court would have been able to exercise jurisdiction over any formal request to enforce the loan modification stipulation and order after dismissal.  *Compare In re Valdez Fisheries Dev. Assoc., Inc.*, 439 F.3d 545, 547-48 (9th Cir. 2006) (dismissal divested bankruptcy court of jurisdiction to enforce settlement order) *with Re/Max Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 641-42 (6th Cir. 2001) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994)) (court has no jurisdiction to enforce settlement in non-bankruptcy case absent provision retaining jurisdiction or provision expressly incorporating terms in order).

[19]     The court might have a different view if the cost imposed on the Debtor had been greater than the benefit that the Debtor derived.  *See In re Williams*, 378 B.R. 811, 828 (Bankr. E.D. Mich. 2007) (denying compensation where cost of post-confirmation services was prohibitive and bound to cause plan to fail).

Debtor nonetheless had an interest in the return of the funds that required the services of the Applicant.

Regardless of whether the overpayment refund is returned to the Debtor or distributed by the Trustee to satisfy the Debtor's obligations to his creditors, the Applicant performed services in connection with the Debtor's case, even if the services were rendered after dismissal. Moreover, the Debtor will derive a benefit from the post-dismissal services of the Applicant, all of which were necessary given the resistance of Ditech. As such, the Applicant has satisfied its burden of demonstrating that the post-dismissal services related to the overpayment refund were necessary, beneficial and rendered in connection with the case.

The remaining post-dismissal services relate to preparation of the Application. Section 330(a)(6) allows a professional, including an attorney for a Chapter 13 debtor, to seek compensation for preparation of a fee application. 11 U.S.C. § 330(a)(6). The principal of the Applicant and a paralegal spent 0.70 hours of time in the aggregate preparing the Application, the itemized statement, the notice, the proposed order and the certificate of service. Preparation of the Application appears to have been properly apportioned between the principal and the paralegal to ensure efficiency. Moreover, because the Applicant was required to promptly file the motion to dismiss upon receiving such instruction from the Debtor, it would be unfair to deny the Applicant compensation to which it would otherwise be entitled under section 330(a). The court finds that the Applicant has demonstrated that the time spent preparing the Application was reasonable.

The court must stress that the decision in this case may be the exception, not the rule. *See In re Williams*, 378 B.R. at 823 (recognizing that generally services that benefit debtor are services that facilitate completion of a case) (citing Collier on Bankruptcy ¶ 330.04 [1][b][v]); *see also* 11 U.S.C. § 330(a)(3)(C) (consideration is whether services necessary to administration of case *or*

services rendered toward completion of case).  However, due to a confluence of events, the post-dismissal services of the Applicant directly and inextricably related to a pre-dismissal event – the overpayment refund ordered by the court.  The overpayment refund will either be distributed to satisfy a portion of the debts that the Debtor owes to his creditors, or will revest in the Debtor.  Under either scenario, the Debtor will receive a benefit.  By taking steps to ensure that the overpayment refund was paid, the Applicant provided services that were necessary to the administration of the case, albeit one that was dismissed.

Subject to the reductions agreed upon by the Applicant and the Trustee, the court shall approve the fees and expenses of the Applicant after dismissal of the case.

### c. Timeliness of the Request for Compensation

In addition to asserting that the court should not award the Applicant compensation for post-dismissal services, the Trustee separately argues that the Applicant's request for an award of compensation was untimely.  Simply put, the Trustee asserts that the Applicant should have filed its fee application requesting approval of its fees and expenses earlier.  The Trustee invites the court to exercise its authority by imposing a deadline based on "common sense and reasonableness."  As support, the Trustee relies on a decision in which the Bankruptcy Court for the Southern District of Ohio established parameters for the timely filing of fee applications in Chapter 13 cases.  *In re Newman*, 270 B.R. 845, 848-49 (Bankr. S.D. Ohio 2001); *see Clendenin v. Burks*, 2007 WL 2029060, at *3-4 (S.D. Ohio July 10, 2007) (relying on *Newman* and affirming denial of untimely fee application); *see also In re Anderson*, 253 B.R. at 19 (denying fee application for failure to comply with deadline imposed by court).

In *Newman*, the Chapter 13 trustee objected to fee applications filed by the same attorney for debtors in different cases because the attorney had failed to seek compensation for prolonged

periods of time – in some cases, several years. *In re Newman*, 270 B.R. at 848. Upon the request of the parties, the *Newman* court reluctantly announced that a fee application seeking an award of compensation under section 330(a) should be filed "as soon as is reasonably possible, or approximately 30 to 45 days, following the completion of the legal services rendered on a given issue." *Id*. The *Newman* court declined, however, to apply the newly announced deadline to the fee applications at issue in the cases before it. *Id*. at 848-49.

The Trustee argues, and the court agrees to some extent, that the Applicant should have sought an award of compensation shortly after entry of the dismissal order instead of waiting nearly two months. The Applicant also should have filed similar requests with some regularity to ensure that the Debtor and the Trustee were aware of additional amounts that would need to be paid instead of waiting more than a year after the filing of its first fee application. *See* 11 U.S.C. § 331 (professional may apply for interim compensation every 120 days or with greater frequency upon court approval); *see also In re Williams*, 378 B.R. at 826 (attorney for debtor has affirmative obligation to assess in advance impact of potential fees and expenses on debtor and plan so debtor can make informed decision as to course of action). As the Trustee notes, the Applicant was well aware that the Debtor's case was on the brink of dismissal in light of the numerous motions to dismiss that had been filed, yet the Applicant neglected to file its fee application. The court understands the Trustee's arguments and shares her concerns. However, the court also shares the reluctance of the *Newman* court.

In this case, the Applicant was required to seek dismissal promptly upon the request made by the Debtor. As such, it was not practical for the Applicant to prepare and file the Application before seeking dismissal. *See In re Fox*, 140 B.R. 761, 763-64 (Bankr. D. S.D. 1992) (recognizing impracticality of requiring fee application before dismissal). After all, the Applicant must place

the interests of the Debtor above the Applicant's own pecuniary interests.  *See*, *e.g.*, Mich. R. Prof. Cond. 1.2 (attorney shall abide by decisions of client); Mich. R. Prof. Cond. 1.3 (attorney shall act with reasonable diligence and promptness); Mich. R. Prof. Cond. 1.7(b) (stating circumstances in which attorney may continue representation, including upon informed consent in writing); *see also In re Radzikowski*, 507 B.R. 798, 801-801 (Bankr. W.D.N.Y. 2014) (attorney for debtors in dismissed Chapter 13 case required to represent debtors' interests, not self interest by first seeking payment upon dismissal).[20]  By imposing the deadline sought by the Trustee (*i.e*., the date of dismissal or shortly thereafter), the court would unnecessarily be creating tension between the Applicant's ethical duties and its right to receive compensation for the services it provided to the Debtor.  The court is also mindful of the fact that neither the Trustee nor any other party in interest has asserted that it will be prejudiced due to the timing of the Application.  *See In re Sweports, Ltd.*, 777 F.3d 364, 367 (7th Cir. 2015) (recognizing conflict between filing motion to dismiss and fee application and noting postponement of fee application resulted in no prejudice to any party). Finally, the Trustee's argument is not practical given the fact that the Debtor required the Applicant's services after dismissal of the case.

The court recognizes that it has the inherent authority to establish a deadline for the filing of requests for an award of compensation upon dismissal.  *See In re Alda*, 464 B.R. 61, 2010 WL 492 4615, at *4.  However, it would be inappropriate to establish a deadline in the confines of this case that might thereafter be applied in future cases in the Western District of Michigan.  Rather, any such deadline, to the extent even necessary, should be established only after input from the other judges of this court, the consumer debtors' bar, the Chapter 13 trustees, and other parties in

---

[20]     The Michigan Rules of Professional Conduct govern the ethical obligations of attorneys practicing before this court.  *See El Camino Resources, Ltd. v. Huntington Nat'l Bank*, 623 F.Supp. 2d 863, 876 (W.D. Mich. 2007) (citations omitted).

interest. *See* Fed. R. Bankr. P. 9029 (allowing bankruptcy courts to promulgate local rules). Unless and until a local rule is promulgated or an administrative order entered, the facts and circumstances of each case should determine whether a request for an award of compensation is timely.[21]

Under the circumstances, the Applicant's pre and post-dismissal services were necessary, beneficial and rendered in connection with the Debtor's case. The Applicant also timely requested an award of compensation. Therefore, subject to the reduction agreed upon by the Applicant, the court concludes that the Applicant is entitled to an award of compensation under section 330(a) in the amount of $4,539.60.

**B.     *Request for an Administrative Expense***

Having determined that the Applicant should be awarded compensation under section 330(a), the court turns to whether the Applicant is entitled to an administrative expense under section 503. Based on the facts of this case, the court concludes that the Applicant is entitled to an administrative expense for all compensation awarded by the court.

Section 503, which establishes the means by which to obtain an allowed administrative expense, is closely intertwined with section 330(a). Section 503(b) provides, in pertinent part, that after notice and a hearing, a professional shall hold an administrative expense for "compensation and reimbursement awarded under section 330(a). . ." 11 U.S.C. § 503(b)(2). An award of compensation under section 330(a) is a prerequisite to satisfaction of section 503(b)(2). In the event that section 330(a) is satisfied, section 503(b)(2) is also satisfied.

In this case, the court approved the fees and expenses of the Applicant by awarding it compensation under section 330(a). As a result of such award, the Applicant also satisfied section

---

[21]     The court questions the need for a rigid deadline, but need not consider the issue further in the context of this case.

503(b)(2).  However, the Applicant is not entitled to an allowed administrative expense unless the Applicant also *timely requested* relief under section 503(a).  Section 503(a) contemplates the time by which requests for administrative expenses under section 503(b) must be filed, but stops short of establishing a firm deadline by providing only that "[a]n entity may timely file a request for payment of an administrative expense, or may tardily file such a request if permitted by the court for cause."  11 U.S.C. § 503(a).  The legislative history to section 503(a) indicates that Congress decided to leave to the Federal Rules of Bankruptcy Procedure "the task of filling in the particulars as to 'the time, the form and the method of such a filing.'"  *Deere Credit, Inc. v. Wiley (In re Wiley)*, 2014 WL 294330, at *4 (Bankr. S.D. Ga. Jan. 24, 2014) (citing H.R. Rep. No. 595, 95th Cong., 1st Sess. 355 (1977); S. Rep. No. 989, 95th Cong., 2d Sess. 66 (1978)); *see United States v. Ginley (In re Johnson)*, 901 F.2d 513, 517 (6th Cir. 1990) (stating and citing same with respect to prior version of section 503(a)).

The Federal Rules of Bankruptcy Procedure, perhaps by design, do not prescribe time limits for the filing of requests for allowed administrative expenses.  *See Hall Fin. Group, Inc. v. DP Partners, Ltd. P'ship (In re DP Partners Ltd. P'ship)*, 106 F.3d 667, 671-72 (5th Cir. 1997) (noting that section 503(a) is intentionally vague and broad).  Absent any contrary section of the Bankruptcy Code or applicable rule, bankruptcy courts are vested with the inherent authority to establish the time by which a request for an administrative expense must be made, including those related to compensation.  *See id.* at 672 (recognizing bankruptcy judges have discretion to set bar dates for administrative expenses); *see also* 11 U.S.C. § 105(a).  One court has explained as follows in the context of a Chapter 11 case:

> Even when the court has not set a deadline for filing of a request for payment of administrative expenses, "timeliness" under § 503(a) provides a judge with the discretion to deny a request for payment of administrative expenses filed so late in the case as to risk prejudicing other, more attentive, parties

in interest.  Such an untimely request is not simply barred; rather, the court may consider the cause of the late filing.

*In re Wiley*, 2014 WL 294330, at *5 (Bankr. S.D. Ga. Jan. 24, 2014) (citation omitted).

In this case, the Trustee argues that the court should not allow an administrative expense to the Applicant after dismissal as a matter of law by stating as follows:

> Even accepting both the proposition that counsel may seek approval of fees post-dismissal, and the proposition that counsel may be paid from previously approved administrative claims from funds on hand with the Trustee in a dismissed case, that does not mean that approval of the fees post-dismissal will vault the fees into a position of approved administrative claim to be paid via Trustee disbursement.  With some exceptions, dismissal of a case generally returns parties to their pre-petition status.  See 11 U.S.C. § 349.  The fees incurred did not become approved administrative claims prior to the dismissal of the case.  See *Rogers*, *supra*.  Even if the fees are approved, there was nothing in the stipulated order between Ditech, the United States Trustee, the Chapter 13 Trustee, and the Debtor that entered prior to the dismissal of the case that would allow a post-dismissal claim against the estate.

(Trustee Supp. Br. at p. 6.)

The court is not persuaded by the Trustee's argument that section 349 requires an administrative expense to be allowed or even requested prior to dismissal.  Among other things, section 349 revests property of the estate in the debtor "[u]nless the court, for cause, orders otherwise. . ."  11 U.S.C. § 349(b).  While it is generally true that dismissal is intended to restore the status quo, nothing in section 349, whether explicitly or implicitly, establishes a deadline to request an administrative expense.  Section 349(b) contains no mention of section 330(a), section 503 or section 507(a)(2).  To the contrary, section 349 contemplates a situation where funds are not returned to a debtor upon dismissal, thereby allowing for a post-dismissal distribution to claimants, including holders of administrative expenses.  Here, the Trustee and the Applicant agree that the court has ordered that the overpayment refund must be distributed pursuant to the terms

of the plan, notwithstanding dismissal.  As such, the Trustee potentially has funds with which to satisfy any administrative expense of the Applicant.

This is not a situation, like in *Cripps*, where it would be impossible for the Trustee to satisfy the Applicant's administrative expense because the estate is empty.  *See In re Cripps*, Case No. 10-07809 (Bankr. W.D. Mich. May 13, 2016).  In *Cripps*, this court determined that certain provisions in Chapter 13, when considered in the context of the confirmed plan, implicitly rendered a request for payment of an administrative expense untimely.  *Id.*  Because the fee application in *Cripps* was filed after the debtors had completed payments under their plan, no funds were, nor would they ever be, available to satisfy any administrative expense granted to the attorney.  *Id.* The facts in this case are distinguishable from those in *Cripps*.  Here, the Applicant seeks an administrative expense which could be satisfied by the estate if the Trustee is allowed to distribute the overpayment refund under the plan, notwithstanding dismissal.  As such, the Applicant's request for payment of an administrative expense is not futile, as it was in *Cripps*.

The Trustee cites to two published decisions which purportedly support her position that an administrative expense must be awarded prior to the dismissal of a case.  *See In re Rogers*, 500 B.R. at 541; *In re Newman*, 270 B.R. at 848.  The Trustee's reliance on both decisions is misplaced. In *Rogers*, the court noted a distinction between allowance of an administrative expense and an award of compensation.  *Id.* at 541.  The *Rogers* court did not, however, consider whether dismissal rendered a request for an administrative expense untimely.  Citing again to *Newman*, the Trustee also argues that the court should deem the Applicant's request for an administrative expense untimely based on "common sense and reasonableness."  However, *Newman* is not helpful to the Trustee, as it addressed an award of compensation under section 330(a), not a request for an

administrative expense under section 503.  *In re Newman*, 270 B.R. at 848.  The *Newman* court also did not consider whether an administrative expense should be allowed after dismissal.

The court understands the Trustee's concerns with respect to untimely requests for administrative expenses, which have the potential to prejudice claimants and other parties in interest.[22]   However, the court is again mindful of the ethical dilemma that the court would be creating if it required the Applicant to request an administrative expense prior to seeking voluntary dismissal.  From a practical standpoint, such a deadline makes little sense.

Because neither the Bankruptcy Code nor the applicable rules explicitly or implicitly require a different result, the court declines to exercise its authority in this case by establishing a deadline that would deny the Applicant an otherwise allowed administrative expense.  The court can discern no reason to deny the Applicant an administrative expense while at the same time allowing other claimants to potentially receive a distribution from the overpayment refund.  The court therefore concludes that the Applicant's request for an administrative expense was timely.[23]

## C.    *The Right to Payment*

Although the Applicant has been awarded compensation entitled to be paid as an administrative expense, the Applicant is not necessarily entitled to be paid by the Trustee, the

---

[22]    By filing a fee application requesting an administrative expense with some regularity and, where feasible, establishing a reserve for administrative expenses in the plan, an attorney for a debtor will ensure that the trustee is making payments to the attorney from funds available for distribution under the plan.  It will also provide some certainty to a debtor who believes his or her plan is close to completion and entry of the discharge imminent only to have his or her attorney file a belated fee application, thereby adding several unexpected months of plan payments or, even worse, preventing entry of the discharge.  *See In re Cripps*, Case No. 10-07809 (Bankr. W.D. Mich. May 13, 2016); *see also In re Mears*, Case No. 11-11505 (Bankr. W.D. Mich. May 13, 2016).

[23]    Although the court concludes the request for an administrative expense was timely in this case, the court might conclude otherwise in cases with different facts.  As such, the court's decision in this case should not be interpreted as an invitation to file fee applications at any time.  The court also notes that the Trustee did not raise an objection based on the doctrine of laches, nor do the facts in this case support such an equitable determination.  *See*, *e.g.*, *In re Chicago Pacific Corp.*, 773 F.2d 909, 917 (7th Cir. 1985) (observing that request for payment of administrative expense must be made within reasonable time and concluding doctrine of laches applied to bar allowance of administrative expense).

Debtor, or any other person.  As the Applicant notes in its supplemental brief, the allowance of an administrative expense is one thing, while payment of an administrative expense is another.  *In re Sweports, Ltd.*, 777 F.3d at 366-67 (bankruptcy court could approve fees and expenses even though no funds were available for distribution after dismissal); *In re Fox*, 140 B.R. 761, 765 (Bankr. D. S.D. 1992) (recognizing that no guarantee of payment exists even if administrative expense allowed).  The same holds true for compensation which, although awarded, might not be paid.

### 1.      *Satisfaction of the Administrative Expense by the Trustee*

In this case, the Applicant and the Trustee both assert that the overpayment refund should be distributed pursuant to the terms of the plan, notwithstanding dismissal of the Debtor's case. The court, however, continues to have concerns regarding the alleged scope of the loan modification stipulation and order.  Specifically, it is unclear whether the order approving the loan modification stipulation allows the Trustee to distribute the overpayment refund pursuant to the terms of the plan as the parties contend, or whether the funds revested in the Debtor upon dismissal. The Trustee and the Applicant assert that the stipulation and order resolving the loan modification dispute should control disposition of the overpayment refund.  According to the Trustee and the Applicant, the order requires the Trustee to make distributions from the overpayment refund pursuant to the confirmed plan, as opposed to the overpayment refund revesting in the Debtor. The court is not so sure.

First, neither the loan modification stipulation nor the order approving it mention distribution by the Trustee after dismissal of the case.  *See* 11 U.S.C. § 349(b)(3) (unless the court orders otherwise for cause, property revests upon dismissal).  They contain no reference to dismissal, cause, ordering otherwise or section 349.  *See In re Weatherspoon*, 2014 WL 61405, at *4-5 (Bankr. W.D. Wash. Jan. 3, 2014) (discussing cause under section 349 but finding it

premature to include additional provision in plan or proposed order requiring satisfaction of fees and expenses before returning funds to debtor upon post-confirmation dismissal). Instead, the stipulation and order are silent as to the treatment of funds held by the Trustee upon dismissal, thereby leading the court to believe that the default rule applies. *Compare Williams v. Marshall*, 526 B.R. 695, 699 (N.D. Ill. 2014); *In re Hamilton*, 493 B.R. 31, 39 (Bankr. M.D. Tenn. 2013) *with In re Darden*, 474 B.R. 1, 8-9 (Bankr. D. Mass. 2012); *In re Parrish*, 275 B.R. 424, 426 (Bankr. D. D.C. 2002).

Second, the Application fails to provide the Debtor with any notice that the Applicant is seeking to be paid from funds that arguably should have been returned by the Trustee to the Debtor upon entry of the dismissal order. *See* Mich. R. Prof. Cond. 1.4 (attorney must explain matter to extent necessary to permit client to make informed decisions); Mich. R. Prof. Cond. 1.7(b) (requiring informed consent).[24] There is nothing in the record demonstrating that the Debtor consented to distribution of the overpayment refund by the Trustee upon dismissal, or that he intended for the court to order otherwise under section 349 when the stipulation was filed.[25] In fact, the Applicant's reply brief seems to contemplate the return of the overpayment refund to the Debtor when it states that the Applicant's services "afford the Debtor the opportunity to request that the funds be remitted to him." Yet, in its supplemental brief, the Applicant takes a position

---

[24] It is also unclear if other holders of administrative expenses, if any, were given notice that funds potentially remain to be distributed, notwithstanding dismissal. *See In re Ragland*, 2006 WL 1997416, at *1 n.3 (Bankr. E.D. Pa. May 25, 2006) (noting that claimants should receive notice prior to distribution of funds remaining after dismissal).

[25] The Application, like the first fee application filed by the Applicant, was not signed by the Debtor. Nor did the Debtor sign the loan modification stipulation. The Debtor did, however, sign the initial plan, all pre-confirmation amendments, the post-confirmation amendment, and the motion to voluntarily dismiss the case. The court is not aware of any section of the Bankruptcy Code or applicable rule that would require a debtor to sign these documents. Instead, this appears to be a practice employed by the Applicant with respect to most, but not all, pleadings filed in Chapter 13 cases.

that is wholly inconsistent with its statement in the reply brief when it argues that the overpayment refund should be distributed pursuant to the plan.

Because the loan modification stipulation and order are less than clear and the court cannot reconcile the statements made by the Applicant in its briefs, the court shall provide the Debtor, who is still represented by the Applicant, with an opportunity to assert that the funds should have been promptly returned to him upon dismissal.[26]

### 2.    *Payment of Compensation Awarded Directly by the Debtor*

As a general proposition, nothing in the Bankruptcy Code or any applicable rule precludes the Applicant from seeking payment of previously approved fees and expenses directly from the Debtor after dismissal.  In this case, the court has approved the Applicant's fees and expenses by awarding the Applicant compensation under section 330(a).  As such, the Applicant could hypothetically seek payment directly from the Debtor.  However, because the parties have apparently agreed to limit the source of compensation to the estate, the Applicant may not seek payment directly from the Debtor at this time.

The Applicant filed its Statement pursuant to section 329 and Rule 2016(b) shortly after the petition date.  The Statement provides that compensation is "[t]o be paid by Trustee through Plan."  The Statement contains no mention of payment by means other than through the plan, including upon dismissal.  Conceivably, the retention agreement might supplement the Statement and require the Debtor to satisfy any fees and expenses approved under section 330(a) that remain unpaid after dismissal of the Debtor's case.  But the Applicant has not filed a copy of its retention

---

[26]    The court is uncertain why the Debtor would request that the Applicant continue to monitor the status of the overpayment refund if, as the Trustee and the Applicant contend, none of it will be returned to the Debtor.  However, the court has relied on the representation of the Applicant that the Debtor instructed the Applicant to take these actions. The court notes that the Applicant appeared at the initial and final hearings on behalf of itself, but not the Debtor.  To the extent necessary, the court will revisit this issue at a later date.

agreement.  Instead, the Applicant is, at least for the time being, constrained by the Statement, which limits the source of compensation to funds paid by the Trustee through the plan in satisfaction of administrative expenses.  *See In re Snyder*, 445 B.R. 431, 439 (Bankr. E.D. Pa. 2010) (statement under Rule 2016(b) should be construed against attorney and in favor of debtor in absence of other evidence).[27]  Because of the limiting nature of the Statement, the court shall suspend any payment by the Debtor of the fees and expenses he incurred unless he voluntarily seeks to satisfy what is, at this point in time, nothing more than a moral obligation.  *See also In re Fricker*, 131 B.R. at 841 (court must protect debtor from obligation to pay unreasonable fees even after Chapter 13 case dismissed).  In the event that the Applicant's fees and expenses are to be paid, it must be through the plan and from the overpayment refund, the only funds remaining in the possession of the Trustee.

At this point, it is impossible to determine from the record whether the overpayment refund should be distributed under the plan or revested in the Debtor.  The Applicant is therefore not entitled to have its administrative expense satisfied from the overpayment refund at this time.  Similarly, because the Applicant and Debtor appear to have limited the source of the Applicant's compensation to the funds distributed through the plan, the Applicant may not seek payment from the Debtor absent further order from this court.

---

[27]    The court recognizes that LBR 2016-2(e)(1)(A) has not been strictly enforced until recently.  Regardless, a professional has an affirmative obligation to adhere to the Bankruptcy Code and applicable rules.  Despite the Applicant's shortcoming, the court perceives some inequity in limiting the source of compensation simply because the Applicant has not filed a copy of a retention agreement that might obligate the Debtor for unpaid fees and expenses upon dismissal.  This is particularly true in light of the fact that no party in interest has objected to the disclosures, or lack thereof, made by the Applicant.  Moreover, the court has also concluded that the fees and expenses in the reduced amount are reasonable, regardless of whether funds exist to satisfy the Applicant's administrative expense.  The court shall therefore provide the Applicant with an opportunity to supplement its Statement by attaching a copy of the executed retention agreement.

## CONCLUSION

Professionals seeking to be compensated for services related to a bankruptcy case must strictly adhere to the requirements imposed by the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the local bankruptcy rules, the rules of professional conduct, and other guidelines. Although the compensation process can be somewhat burdensome, it serves an important function by ensuring transparency, expediting payment, and protecting the debtor, the debtor's estate, its creditors, and even the very professionals seeking compensation.

In this case, the Applicant properly disclosed the fees and expenses sought, even after dismissal of the case. The Applicant's disclosures ensured that parties in interest and the court were given sufficient information to determine whether the Applicant should be awarded compensation and entitled to an administrative expense. However, without more, the court is not persuaded that the loan modification stipulation and order allow the Trustee to distribute the overpayment refund through the plan. In addition, because the Statement provides that the Applicant is only entitled to be paid from the estate through the plan, the Applicant may not, at this time, seek payment from any other source.

For the foregoing reasons, the court shall grant the Application in part, deny the Application in part, order that no fees and expenses be paid to the Applicant absent further order of the court, and defer ruling on whether the overpayment refund may be distributed by the Trustee to satisfy claims, including the administrative expense of the Applicant. The court shall enter a separate order consistent with this Memorandum Decision.

**Signed: May 13, 2016**





John T. Gregg
United States Bankruptcy Judge